### NEVINS v. CURTISS–WRIGHT CORPORATION.

#### No. 10686.

United States Court of Appeals
Sixth Circuit.

Feb. 7, 1949.

L. G. Windom, of Columbus, Ohio (R. J. O'Donnell and L. G. Windom, both of Columbus, Ohio, on the brief), for appellant.

Carl Tangeman, of Columbus, Ohio (Carl Tangeman, of Vorys, Sater, Seymour & Pease, all of Columbus, Ohio, and Desmond FitzGerald, of Spence, Hotchkiss, Parker & Duryee, all of New York City, on the brief), for appellee.

Before HICKS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The district judge decided in favor of the defendant, Curtiss-Wright Corporation, in this court action brought by James Wilson

Nevins under section 8(e) of the Selective Training and Service Act of 1940, as amended, Section 308(e), Title 50 U.S.C.A., and Nevins has appealed.

When inducted into the United States Army on September 30, 1942, the appellant was working as a tool maker in the employ of the appellee at its plant in Columbus, Ohio. His rate of pay, at the time of his induction, was $1.15 per hour. Following his honorable discharge from the Army on April 21, 1945, appellant was re-employed on May 23, 1945, at the rate of $1.20 per hour in his former position, with his same seniority and status, and in the same plant as when he joined the Army.

He claims that had he been continuously employed by appellee as a tool maker during the time he was in the Army, he would have received periodic increases which would have stepped up his pay to $1.50 per hour by May 23, 1945, when he was reemployed. The prayer of his complaint is for a specific order requiring appellee to include his service in the Army as service in its employ for the purpose of determining his rate of pay, and for compensation from appellee for loss of wages suffered by its failure to make such inclusion.

Nevins contends that section 8(b) and (c) of the Selective Training and Service Act requires his restoration to his former position at the rate of pay to which he would have been entitled had his entire service in the Army been for all purposes included and considered as service in the employ of appellee.

The following pertinent provision is found in the collective bargaining agreement between his Union and the employer, effective at the Columbus plant at the time of his induction into the Army: "Article VIII. Section 2. All occupations (except cafeteria workers) are classified into ten labor grades. The respective rates for these labor grades are set forth in Schedule A annexed hereto. The various occupations in labor grades 1 to 10 are set forth in a separate schedule, a copy of which has been initialed for identification and delivered to the Union. Inexperienced employees, after having reached an hourly pay of 75¢ per hour as provided in Section 1, shall be increased periodically in accordance with Schedule A until they have reached the maximum rate for their respective labor grade. Employees who are experienced in the occupation for which they are hired will be hired at least at the qualifying rate for their respective labor grades, set forth in Schedule A, and (except in labor grades nine and ten, where the qualifying rate is the maximum rate) will thereafter be periodically increased until they reach the maximum for their respective labor grades. If an employee fails to meet the required standards for the job, he may be reclassified to another occupation for which he can qualify. Nothing herein shall prevent the employer from increasing the rates of employees at more frequent intervals than those provided in Schedule A, on the basis of qualifications." The operative collective bargaining agreement in effect at the Columbus plant of appellee, when appellant was reemployed, contained similar provisions pertaining to periodic wage increases, except that the intervals of time and amount of wage increases were varied.

The appellee takes the position that the periodic increases are not "length of service" increases, but are for greater skill and ability of the individual employee assumed to have been acquired by reason of actual performance of the work during the period required for each increase, and were substituted for merit increases previously given by the company.

The main plant of the airplane division of the Curtiss-Wright Corporation was located at Buffalo, New York. With the necessity for enormous war-time expansion, this company built new plants, including one at Columbus, Ohio, which was opened in June of 1941. The pay rate structure in effect at the Buffalo plant was made operative at the Columbus plant. Numerous unskilled production workers had to be employed, and many inexperienced foremen had to be trained and used. It was soon seen that the merit increase system could not be followed with fairness and precision.

A dispute between the company and the Union, representing the production employees in the Buffalo plant, was submitted to arbitration; and, on July 15, 1941, the arbitrators rendered an award containing

the principles of a new wage increase system, substituted for the merit increase system, which was geared to the average time required by employees to learn their crafts. The principles of this arbitration award, together with a new wage rate schedule, were made operative at the Columbus plant upon its opening.

In an adversary proceeding between the appellee and the Union, the National War Labor Board adopted the following recommendation of its special panel: "Automatic in-grade increases are provided for in each of the company's plants, except that the period between increases is six months at Buffalo and St. Louis and three months at Columbus. The problem of in-grade increases is closely tied to the over-all length of time, under present production methods required for an employee to reach top production in any job. That period of time has been reduced from a period of 72 months to a period of 49 months for the most skilled job. Reduction has become necessary due to technological changes in an industry which has tended toward mass production and away from hand production techniques. It is unrealistic to maintain lengthy time factors in a short labor market when, by job simplification and division, much less time is adequate and has become the industry practice. The same facts which reduced the over-all time for obtaining the necessary skill and proficiency require shorter upgrading periods. These are not really wage increases and the company does not look upon them as such. They are rather promotional advances representing average progress which avoids the cumbersome administration and computation of merit increases which otherwise would be necessary to take account of such advancement. It is the company's opinion, with which the panel concurs, that increases of five cents every three months is a fair amount to compensate an average person in the aircraft industry for additional experience. The new schedule merely regulates a company practice of supplementing its six-month automatic increases with other merit increases which has become an administrative burden."

The argument of appellant that his service in the armed forces should be counted as plant service, for the purpose of computing his pay scale on the basis of the periodic pay increases, is grounded on the proposition that he considers the periodic pay increases automatic on a seniority basis, and not connected in any way with average increase in skill required in performance of plant work. He insists, moreover, that if it be held that periodic pay increases are not to be awarded on the basis of seniority alone, his actual skill upon his return from the Army should have been appraised by the company for the purpose of determining his step-up in pay rate. He points out that all his military service was in the Army Air Force, where, after the usual schooling, he was assigned as an aircraft engine mechanic and did work similar in nature to that performed by him for the appellee.

Supported by substantial evidence, including provisions in the collective bargaining agreement between the Union and appellee, the district court found as a fact that "at the time plaintiff was inducted into the armed forces it was the established rule and practice in effect at defendant's Columbus, Ohio, plant, where plaintiff was employed, not to credit employees with time spent on furlough or leave of absence for the purpose of computing the time of their next periodic increase in wages."

Examining the effective 1942 Union contract and corresponding sections of the 1943 and 1944 labor bargaining agreements, we find that the provisions for increased pay are not tied in with "seniority." The vital Article VIII, section 2, does not even contain the word. Analyzing Article VIII, it appears from section 1 that the minimum hiring rate for *inexperienced* employees is fixed at sixty cents per hour, to be raised automatically at the rate of five cents per hour each month up to seventy-five cents per hour at the end of thirteen weeks. Section 2 provides that the respective rates for the ten labor grades are set forth in Schedule A, annexed to the agreement.

Before the execution of the bargaining agreement with the Union, Nevins was employed at ninety-four cents per hour in the occupation of tool maker, in labor grade one. At the time he was inducted into the Army, his pay was $1.15 per hour, which

was five cents less than the "qualifying rate" for his labor grade as fixed in Schedule A. Article VIII, section 2, provides that "employees who are experienced in the occupation for which they are hired will be hired at least at the qualifying rates for their respective labor grades", and will be increased periodically until attaining the maximum for their grades. We thus see that, when inducted into the Army, Nevins' pay rate was below that for *experienced* employees. The inference is impelled, therefore, that, when hired, he was not deemed experienced; and, when inducted into the Army, he had not attained in his plant work the lowest pay rate provided for an experienced employee.

That the pay rate of an employee remaining continuously in the company's service is not to be increased automatically is made clear by the following significant provision in the collective bargaining agreement governing at the time of Nevins' induction: "If an employee fails to meet the required standards for the job, he may be reclassified to another occupation for which he can qualify." While the increases provided for were periodic for those employees meeting the required standards of their work, such increases were not made compulsory by the governing collective bargaining agreement. Since that instrument did not make the wage increases dependent upon seniority, but on efficiency and skill, the company had contracted to pay the $1.50 per hour claimed by Nevins only to tool makers having eighteen months more experience on the job than he had. It is not permissible that we infer, one way or the other, whether Nevins' progress in and maintenance of his work, had he remained in the employ of appellee and not been inducted into the Army, would have qualified him for pay increases under the collective bargaining agreement. If his work had not come up to standard, he could have been transferred to another occupation, or even discharged. Such alternatives were made possible by the governing agreement.

Section 8(b) (B) of the Selective Training and Service Act requires the restoration by the employer of the qualified veteran, who makes application for reemployment within forty days after he is relieved from military training and service "to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." U.S.C.A., Title 50 Appendix, § 308(b) (B).

Section 308(c) provides, as follows: "Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

The petition of appellant, filed in the district court, states that "on May 23, 1945, defendant restored plaintiff to his former position, restored his seniority and status and has since employed plaintiff"; and that his rate of pay was $1.15 at the time of his induction, and $1.20 per hour at the time of his reemployment.

Less than two months before the opinion of the Supreme Court in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, was announced, we had given actuality to the principle that the veterans' rights to reemployment, assured by the Selective Training and Service Act, should be liberally construed. Trailmobile Co. v. Whirls, 6 Cir., 154 F.2d 866, 869. We said: "There can be no reasonable doubt that in the mind and heart of the Congress the provisions of section 308(c) of the Act were designed and felt to be benevolent and avuncular to the young men compulsorily chosen for military training and service in time of national need. * * * The Act was passed by Congress and approved by the President with full knowledge of the existence of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. That Act was not amended; but surely it should not be presumed that

Congress, in failing to amend the Wagner Act, intended to permit the concerted action of a collective bargaining agency and an employer to destroy or whittle down the statutory right of the returning soldier, sailor, airman and marine to restoration to seniority security in his job granted by the Selective Training and Service Act." We affirmed the judgment of the district court, which restored the seniority status of Whirls as it existed prior to his entry into the military service and cancelled his status fixed by a collective bargaining agreement subsequently made between his employer and a labor union, the effect of which was to deprive him of nine years seniority. Our decision, however, was reversed and our reasoning disapproved by the Supreme Court. Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328.

In the present controversy, the veteran's position is weaker than was that of Whirls. There has been no whittling down of his seniority status by a collective bargaining agreement as was true in Whirls' case. Nevins rests here upon what we believe to be an erroneous conception of the provisions of the collective bargaining agreement itself.

In Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 286, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230, 167 A.L.R. 110, the viewpoint was asserted that the Selective Service legislation should be liberally construed for the benefit of the veteran; but, on the facts of that case, the Supreme Court, in deciding against the claim of the veteran, used language apparently applicable here: "No step-up or gain in priority can be fairly implied. Congress protected the veteran against loss of ground or demotion on his return. The provisions for restoration without loss of seniority to his old position or to a position of like seniority mean no more." In the case at bar, the employer has met this test. Concededly, Nevins has been restored to his former position without loss of seniority. His complaint so states.

On June 1, 1948, this court decided three separate actions heard together on appeal, involving interpretation of the same sections of the Selective Training and Service Act presently under consideration. Raulins v. Memphis Union Station Co., 6 Cir., 168 F.2d 466, 469, 470. It was held that, under the provisions of the Act, electrician helpers inducted into the armed forces while employed pursuant to a collective bargaining agreement which provided separate seniority lists and a separate seniority system for each subdivision of their class were protected in seniority in their subdivision, but were not guaranteed promotion to vacancies occurring in the higher subdivision of electricians in the absence of any provision therefor in a collective bargaining agreement, or in a contract, either oral or in writing, or by custom. Judge Miller said: "The Collective Bargaining Agreement does not make promotion from electrician-helper to electrician in case of vacancy an automatic one. * * * Although there is a strong probability that the appellants would have applied for promotion to the vacancies and would have been qualified, yet such promotion was not a matter of right or of certainty merely because of seniority."

This reasoning is applicable to the collective bargaining agreement in the setting of the instant case. The opinion in the Raulins case pointed out that expressions in the Fishgold case "are not logically susceptible of the construction that the Act guaranteed to the veteran while in service any rights which he might possibly have been able to obtain, although by no means a certainty, if he had been working on the job instead of being in the service."

In a case where by their collective bargaining agreement railroad car cleaners and carman helpers had separate seniority rights among themselves, with no provision that an employee classified as a car cleaner might transfer and be classified as a carman helper on the basis of seniority rights, a car cleaner, upon his return from the Army, was held by the Court of Appeals for the Seventh Circuit not entitled to be placed on the seniority list of the railroad as a carman helper before the names of eight car cleaners who had been junior to the veteran, but had been promoted from the classification of car cleaners to carman helpers during the time he was in the Army. Hewitt v. System Federation No. 152, etc., 7 Cir., 161 F.2d 545.

The Court of Appeals for the Second Circuit decided, in Dwyer v. Crosby Co., 2 Cir., 167 F.2d 567, that the veteran, upon restoration to his former civilian position, was not entitled to accumulated "vacation pay" while in the Army, unless it was an established rule of the employer to give vacation pay to those who were on leave of absence.

An informative district court opinion deciding against the contentions of a veteran is reported in Huffman v. Norfolk & Western Ry. Co., 71 F.Supp. 564, wherein the factual situation is closely analogous in all material aspects to that found here. In Harvey v. Braniff International Airways, 5 Cir., 164 F.2d 521, 522, it was held that where airline co-pilots who were inducted into the Army Air Corps were on return to their civilian positions given by their employer their seniority rights and credits as co-pilots, the employer had accorded them everything to which they were entitled under the Selective Training and Service Act; and that, upon qualification as first pilots, they were not entitled to have their base pay calculated as if they had actually been first pilots during their term of service. The Court of Appeals said: "Where an employee has no fixed or absolute right to promotion and where his right to promotion depends upon qualifications over and above mere length of service, the employer has fully complied with the terms of the Selective Training and Service Act when he restores the veteran to the same position or one of like seniority and pay which he held at the time of his induction into the service."

Several district court opinions are cited or set forth in full in the printed brief of appellant. All are clearly differentiable from the case at bar. After oral argument, appellant's attorney filed a copy of the findings of fact, conclusions of law, and memorandum decision of the District Court of Connecticut in Ganniello v. Atlantic Refining Company, filed September 17, 1948.[1] We are not in accord with the decision of the district judge in that case.

◼ In a reply brief, appellant points out that in the Selective Service Act of 1948, section 9(c)(2), 50 U.S.C.A.Appendix, § 459 (c)(2), Congress explained: "It is hereby declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." We are here concerned only with interpretation of the Selective Training and Service Act of 1940, as amended, and effective when Nevins entered the armed forces and when he returned to his employment in the service of the appellee. The 1948 Act is not retroactive.

◼ In obedience to the binding effect of the Supreme Court's decisions in the Trailmobile and Fishgold cases as we construe them, and in consonance with the ensuing opinions of the Courts of Appeal which have been cited in this writing, we think that, in the circumstances of the instant case, the appellee employer has fulfilled its duty to appellant as required by the Act of Congress.

Let the judgment of the district court accordingly be affirmed.

---

[1] Judgment withdrawn; new trial granted.