## SELGRAT v. FIELD ENTERPRISES, Inc. et al.

### No. 50–C–323.

United States District Court
N. D. Illinois, E. D.
June 23, 1952.

Johnson and Wiles, Chicago, Ill., for plaintiff.

Concannon, Dillon and Snook, Chicago, Ill., for defendant.

PERRY, District Judge.

The defendant's motion for summary judgment presents, for judicial determina-

tion, the question as to whether or not a veteran, under the provisions of Section 8 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 459, is entitled to credit toward his seniority the years spent in military service when, at the time of the veteran's entry into military service, there was no collective bargaining agreement covering his employment, and his employer had no other agreements, policies or practices regarding salary increases premised upon length of experience, length of employment, or similar factors, and when the collective bargaining agreement, executed during the veteran's military service, expressly provided that only actual experience in recognized newspaper work can be credited toward seniority.

Prior to September 26, 1947, The Chicago Sun had been published as a standard-size newspaper by Mr. Marshall Field, individually, and later by Field Enterprises, Inc., a Delaware corporation. Sun and Times Co., an Illinois corporation, was the publisher of the Chicago Daily Times and the Chicago Sunday Times, tabloid-size newspapers, published and principally circulated in the City of Chicago.

After the sale of The Chicago Sun to Sun and Times Co., the publication of The Chicago Sun as a standard-size newspaper ceased, and Sun and Times Co. became the publisher of a morning tabloid newspaper, entitled the Chicago Sun, an afternoon tabloid newspaper entitled the Daily Times, and a Sunday tabloid newspaper entitled the Sun and Times. Publication of these separate tabloid newspapers was continued until February 1, 1948, at which time the two daily tabloid newspapers were combined into one publication, known as the Chicago Daily Sun Times. This combination brought about a reduction in personnel, including the discharge of numerous editorial employees.

On March 29, 1942, the plaintiff was first employed as a reporter by The Chicago Sun at a salary of $45 per week. Prior to this time, he was employed in the same capacity by the City News Bureau at Chicago, Illinois, for a period of almost two years. The plaintiff left his position at The Chicago

Sun to enter the military service on July 15, 1942. The parties agree that, as of July 15, 1942, there was no collective bargaining agreement covering his employment, and that the employer, The Chicago Sun, had no other agreements, policies or practices regarding salary increases, which were based upon length of experience, length of employment, or similar factors.

On June 7, 1943, the publisher of The Chicago Sun and the Chicago Newspaper Guild executed the first of several collective bargaining agreements, covering wages, terms of employment, or working conditions in the editorial and news departments of that newspaper. Each of the collective bargaining agreements provided for graduated scales of compensation which increased according to the length of experience of different classes of editorial employees covered by the agreements.

The plaintiff remained in military service until December 31, 1945, when he received his honorable discharge. At this time, he had less than three years actual experience in newspaper work. The plaintiff returned to his employment with The Chicago Sun on February 15, 1946. A contract, dated December 6, 1945, between the Chicago Newspaper Guild and The Chicago Sun was then in force and effect, and it provided for minimum weekly salaries of reporters as follows:

| | |
|---|---|
| Less than one year experience | $40.00 |
| After one year experience | 45.00 |
| After two years experience | 55.00 |
| After three years experience | 65.00 |

In this agreement, as well as subsequent agreements, the term "experience" is defined as "employment by the Publisher in the designated classification of work, or in regular employment in a comparable capacity on English language daily newspapers, recognized news of feature syndicates, press associations, or recognized national news magazines."

Upon plaintiff's reemployment on February 15, 1946, he was informed that his salary would be $55 per week, which was the minimum weekly salary for reporters "after two years experience." Plaintiff protested on the ground that he should be

given credit for time spent in the service in determining his salary and that his salary should be $65 per week. The plaintiff's protest, however, was denied, and the publisher continued to determine the plaintiff's weekly salary in the same manner until January 30, 1948, at which time his services were terminated by reason of the merger of The Chicago Sun with The Chicago Times and the discontinuance of the publication of The Chicago Sun as a separate newspaper.

The plaintiff prosecutes this action under Section 8 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 459, and seeks to recover the sum of one thousand one hundred thirty-seven and fifty-one hundredths dollars ($1,137.50), which represents the difference between the salary paid to him and the salary which he claims he should have been paid for the period from February 15, 1946 to February 1, 1948.

The pertinent provisions of the Act, 50 U.S.C.A.Appendix, § 459, provide that if the veteran is still qualified to perform the duties of his former position, he shall "be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay * *. *. Any person who is restored to a position * * * shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

The Act provides that the veteran shall be restored to his former position "without loss of seniority" and that he shall not be penalized on his return by reason of his absence from his work. The seniority provision does not contemplate a gain in seniority on the part of the veteran but only guarantees him against loss of seniority by reason of his military service. "Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war * * * these provisions guarantee the veteran against the loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he *had;* his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have if he had never entered the armed services. We agree with the Circuit Court of Appeals that by these provisions Congress made the restoration as nearly a complete substitute for the original job as was possible. No step-up or gain in priority can be fairly implied. Congress protected the veteran against loss of ground or demotion on his return. The provisions for restoration without loss of seniority to his old position or to a position of like seniority mean no more." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 1111, 190 L.Ed. 1230. The Act does not give the veteran any superseniority. Trailmobile Company v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328. By this Act, Congress did not create a system of seniority. It recognized the existence of seniority systems as part of the collective bargaining process and the Act serves to guarantee the veteran's rights under those systems. Aeronautical Industrial District Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513. Hewitt v. System Federation No. 152, 7 Cir., 161 F.2d 545. The veteran's rights at restoration are identical with those which inhered at the instant of induction. Grubbs v. Ingalls Iron Works Co., D.C., 66 F.Supp. 550.

In the case before the bar, the undisputed facts reflect that the plaintiff was not, in any way, prejudiced upon his reemployment and that his employer did fulfill the statutory requirements of the Act. Upon his entry into the armed forces, he was employed as a reporter at the weekly rate of $45. After his discharge, the plaintiff was reemployed in the same position and received a weekly salary of $55, which

was the scale set in the collective bargaining agreement for men with two years experience. Thus, the plaintiff was restored not only to his prior status but also acquired rights to a salary increase under a collective bargaining agreement, which was executed after his induction into the armed forces. He was restored to the status he enjoyed on the date of his departure for the military service, which date is determinative of the veteran's rights under the Act. The plaintiff cannot contend that his years in military service should be credited toward his seniority because "he does not step back on the seniority escalator at the point he stepped off." Fishgold v. Sullivan Drydock & Repair Corporation, supra. The fact remains that the plaintiff had no seniority status at the time of his entry into the military service; and he did not acquire any seniority in the military service. Lesher v. P. R. Mallory & Co., 7 Cir., 166 F.2d 983. Upon his reemployment, the plaintiff received the benefit of increased salary under the provisions of the collective bargaining agreement. He cannot, however, derive only the benefits from this agreement; he must also accept the condition as to "actual experience." This condition, namely that only actual experience in the newspaper field will be credited toward seniority, does not, in the Court's view, discriminate against the veteran; it applies to all employees alike. A condition of this type in a collective bargaining agreement, so long as it does not discriminate against the veteran, does not violate the provisions of the Act. Fries v. Pennsylvania R. Co., 7 Cir., 195 F. 2d 445.

To sustain the plaintiff's contention that his years in military service should be counted toward his seniority, the court would be forced to place upon the Act a construction which is not warranted by its statutory language. The Act was not intended to conflict, in any manner, with legally established labor relations. It was not designed to offer the veteran an additional source of employees' rights, which could not be realized by the civilian through collective bargaining processes. Its machinery was to be blended with the prevalent labor-management practices in order to

achieve a preservation of the inductee's rights and to avoid, in his absence, any action or discriminatory practices, which might prejudice those rights. In the case before the bar, no such action, discriminatory or prejudicial to the plaintiff exists.

The defendants' motion for summary judgment is sustained.