**Larry BROWN, Plaintiff,**

v.

**The DENVER POST, Inc., a Colorado Corporation, Defendant.**

**Civ. A. No. 5003.**

United States District Court
D. Colorado.

Sept. 13, 1956.

Donald E. Kelley, U. S. Atty., Robert Wham, Asst. U. S. Atty., and Reid Williams, U. S. Dept. of Labor, Denver, Colo., for plaintiff.

Akolt, Turnquist, Shepherd & Dick, G. M. Westa, Denver, Colo., for defendant.

KNOUS, Chief Judge.

This action was commenced by the complaint of the United States Attorney on behalf of the plaintiff, an employee of the defendant corporation, pursuant to 50 U.S.C.A.Appendix, § 451 et seq. Trial on the merits was had to the Court on July 18, 1956, and the matter now rests for final disposition.

The pertinent facts as presented during the trial are as follows: The defendant corporation is in the business of and engaged in the publishing of a newspaper known as the Denver Post. During the year 1948 the plaintiff, Larry Brown, was employed by the defendant and remained, off and on, in such employment until November 6, 1950. The nature of his employment up to the latter date is immaterial here. On that date he was hired as a part time "District Adviser." The evidence discloses that a District Adviser is one who, in a general way, supervises the activities of route carriers who in turn distribute the defendant's newspapers. There are some eighteen to thirty-five route carriers in each district. The supervision of these carriers includes matters related to distribution, sales, personnel problems, and good will.

On January 18, 1951, the plaintiff became a full-time District Adviser, handling the supervisory work above described in his assigned district. This employment continued until March 16, 1951, at which time the plaintiff entered the armed services of the United States. He was subsequently discharged during the month of August, 1952, and on November 3, 1952, returned to the employment of the Denver Post in the same capacity as that which he had held upon his entry into the armed services.

The contract between the defendant and the Newspaper Guild of Denver, Local No. 74, of the American Newspaper Guild, representing the plaintiff, which was in force at the time the plaintiff entered the military service, provided, in part:

"Article II

"Minimum Salaries

"1. Minimum weekly salaries for circulation department employees:

"Group 1, District advisers * *

| | |
|---|---|
| During 1st year | $42.00 |
| During 2nd year | $49.50 |
| During 3rd year | $57.00 |
| During 4th year | $64.50 |
| Thereafter | $72.00 |

\* \* \* \* \* \*

"2. The above contract minimums (for the stated years of experience in respective job classifications) shall include all regular employment in similar work. The experience rating of new employees shall be determined at the time of employment."

The contract in force at the time of plaintiff's reemployment provided in Group 20 of Article III that the minimum weekly rates for District Advisers would be:

| | |
|---|---|
| During 1st year | $47.00 |
| During 2nd year | $55.50 |
| During 3rd year | $64.00 |
| During 4th year | $73.00 |
| Thereafter | $81.50 |

\* \* \* \* \* \*

[Continuing under Article III]

"2. A general increase of three dollars ($3.00) will be paid to all employees, but an employee shall not receive an increase both from the change in minimums and from the general increase, but shall receive whichever is greater.

\* \* \* \* \* \*

"4. The above contract minimums (for the stated years of experience in the respective job classifications) shall include all regular employment in similar work . . . The experience rating of new employees shall be determined at the time of employment.

\* \* \* \* \* \*

"Article XIII

"National Emergency

"1. Any employee who, since the passage of the National Guard and Selective Service Acts of 1940, has left the employment of the Publisher to enter the armed services of the United States Government shall be considered an employee on leave of absence, and on release from such service shall resume his position or a comparable one with a salary no less than he was receiving at the time of entering such service. If the scale minimum of his experience classification should be higher on his return, he then will be entitled to that minimum."

On March 16, 1951, when the plaintiff left his employment for military service, he was being paid the minimum weekly salary of $42 for first year employment. Upon his return, his salary was $47 a week, that being the minimum weekly salary during the first year as specified under the contract in force upon his return to employment. Thereafter, on August 13, 1953, the plaintiff was advanced to the minimum weekly salary for the level of second year employment as specified in the contract then in force, and subsequently, on August 13 of each suc-

ceeding year the plaintiff has advanced to the specified minimums provided by the yearly step-rate increases.

■ The plaintiff here contends that the time spent by him in the military service should have been considered in determining when he was entitled to the yearly step-rate increase, i. e., that he has been deprived of the increase in minimum weekly wages which would have accrued to him had he been given credit for approximately eighteen months while in the military service.

The defendant, on the other hand, alleges that the contracts in force both when the plaintiff left for military service and at the time he returned, specified that an employee is entitled to the yearly step-rate increases only if he is in the actual on-the-job employment of the defendant for a full year and has thus acquired one full year's experience and that, therefore, the plaintiff was not entitled to have his eighteen months of military service considered in determining when he was to be given a step-rate increase. The issue, then, is simply whether one is entitled under the contracts here in question and § 459 of Title 50 U.S.C.A. Appendix, to step-rate increases from mere years of employment, or only after years of on-the-job employment with the attendant experience. In the opinion of the Court, the latter view must prevail.

Section 459 of Title 50 U.S.C.A. Appendix, provides in part that one who is inducted into the armed services and leaves a permanent position in the employ of a private employer, and who successfully completes his time in the armed service [and follows other procedures, not here in question, in that they were followed] and [(b) (B) (1)]

"if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay * * *."

Subsection (c) thereof provides:

"(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

■■ The purpose of the Act is set forth succinctly in Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 284, 66 S.Ct. 1105, 1110, 90 L.Ed. 1230:

" * * * The Act [predecessor of the above] was designed to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind."

By the same authority it is held that contracts between employers and unions cannot carve away rights given under the statute by Congress to veterans returning to their employment. To the same effect is Boone v. Fort Worth &

Denver Railway Company, 5 Cir., 1955, 223 F.2d 766. However, an employee's rights before entering the service are dependent upon the contract then in force, and his rights as a furloughed employee upon his return to employment at the termination of his military service are dependent upon the contract then in force—assuming, of course, that the latter contract does not discriminate against returning veterans. Aeronautical Indus. Dist. Lodge v. Campbell, 1949, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513; Cushnier v. Ford Motor Co., D.C.Mich.1950, 89 F.Supp. 491. In the last-cited opinion of the Supreme Court, it was said, 337 at page 525, 69 S.Ct. at page 1289:

" * * * Thus, under the Act the veteran accumulates time toward his seniority while in the service; he also becomes the beneficiary of those gains the achievement of which is the constant thrust of collective bargaining. In other words, the Act gives him the status of one who has been 'on furlough or leave of absence' but uninterruptedly a member of the working force on whose behalf successive collective agreements are made. In this way the Act protects the furloughed employee from being prejudiced by any change in the terms of a collective bargaining agreement because he is 'on furlough,' but he is not to be favored as a furloughed employee as against his fellows. This is the essence of our decision in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230."

From an examination of the provisions of the collective bargaining agreement involved here, and in force at the time of plaintiff's return to employment, it cannot be said that it in any manner discriminates against the veteran. It treats him (as Congress demanded it should) as an employee on leave of absence. It not only assures him upon his return of the same or comparable position he formerly enjoyed, with no diminution in salary, but in fact grants to him any increase for which agreements entered into

subsequent to his departure provide. The fact that salary increases are based upon the step-rate system is not a discriminatory feature, for it treats all employees alike and, of course, the same system was in effect at the time the plaintiff departed.

■ As will appear from a reading of the provisions of the contract hereinabove quoted, the basis for the application of the step increase is not spelled out as clearly as it might be; however, in paragraph 4 of Article III of the agreement, it is said that the contract minimums are "for the stated years of experience in the respective job classifications." The Court does not view the presence of the last-quoted phrase in the contract (therein parenthesized) as being meaningless or an afterthought; rather, it can not be taken as expressing anything other than that "experience" on the job is the determining factor in applying the step-rate scale. As supporting the theory of the provision, it can not well be questioned that one does gain experience in any job by performing the duties attending the job. Thus, "years of employment", which may be synonymous with "seniority", can not under the contract be so with "years of experience," but may become so only by being "years on-the-job employment." With this interpretation given the contract the application of the statute remains.

In Huffman v. Norfolk & Western Ry. Co., 1947, 71 F.Supp. 564, the District Court of Virginia, Barksdale, J., dismissed a complaint, the crux of which was that the plaintiff-employees who had returned to their employment from the service were complaining of the step-rate system and its application to them. The Court said, at page 566:

"[2] The Step-Rate system, as will be clearly observed, is something entirely separate and distinct from seniority. Seniority begins when an employee's pay begins, and continues so long as he is in the employ of the Railway, regardless of whether he be laid off, on vacation, or, by the terms

of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq., in the military service. It results in certain preferential treatment of employees based upon their length of service. In its application to a home record clerk, such as plaintiffs were, if it became necessary to lay off three such clerks by reason of slack work, the three who were lowest on the seniority list would be the three who were laid off. Similarly, if these three employees were called back to work, one by one, the one with the greatest seniority would be called first and the one with the least seniority would be called last. So also, if a vacancy arose in the better position of foreign record clerk, the home record clerk with the greatest seniority would be offered the better position. Either lay-off or advancement would depend entirely upon seniority, without reference to the Step-Rate system. In the sense that I have indicated, there is no question that all the plaintiffs have been restored to their full seniority rights.

"[3] However, plaintiffs contend that because progress in the Step-Rate system follows the accomplishment of each period or step, without examination or other test of efficiency, that the resultant increases in pay are automatic with the passage of time, and therefore the Step-Rate system and seniority are synonymous, and that the mandate of the statute requiring that veterans be credited with time spent in military service, in the matter of seniority, requires also that the plaintiffs be given credit in the Step-Rate system for their time spent in military service. To my mind, merely to state this contention, is to refute it. The simple fact is that progress in the Step-Rate system is solely and only based on clerical experience or college training. Plaintiffs have been given credit for every day spent by any of them in clerical work in military service. Time otherwise spent in military service, however praiseworthy it may be, is not clerical experience, and I can find nothing in the statute requiring, or even justifying, that it be so considered."

The plaintiff here does not contend that in his military tenure he attained any experience in positions which might be related to that of a "District Adviser."

■ In Altgens v. The Associated Press, 5 Cir., 1951, 188 F.2d 727, the appellants, as wirephoto operators in the employment of appellee, brought an action to recover wages allegedly owing them by appellee which the latter had failed to pay them upon their re-employment following military service. The plaintiffs were given salary increases when they resumed their positions, due to intervening contracts, but were not given credit for "wirephoto experience" while in the service, and consequently no step-rate increase, which system had been adopted subsequent to their departure for military service. The Court of Appeals, in affirming the judgment for the defendant, stated at pages 728, 729:

"[1] When appellants were re-employed, they were given all the seniority rights to which they were entitled, but were not credited with wirephoto employment for the periods of their military duty; they were credited with only such wirephoto employment as they had actually engaged in prior to their entry into the service. Appellants contend that this failure to credit them with wirephoto employment for the periods that they were in the service substantially and prejudicially deprive them of wages to which they were entitled. Appellants base their contention on the language of the collective bargaining contract, which makes wirephoto employment prerequisite to periodic salary advances; and they urge that, under the collective bargaining contract, progression up the step-rate ladder was automatic upon the passage of time;

that no skill, special aptitude, or qualification, was required other than a specified time at wirephoto employment; and that, had they not been at war, they would have continued in wirephoto employment, and automatically at intervals have obtained the step-rate increases provided in the union contract. On the other hand, the appellee-employer contends that the collective bargaining contract providing for the step-rate system of compensation contemplated increases in the basic wages of wirephoto operators upon their attaining certain periodic steps of actual wirephoto experience on the job.

"Since there is a difference in the way these parties have interpreted the language 'wirephoto employment' in the collective bargaining contract, which initiated the step-rate system, it is incumbent upon us to determine the correct interpretation of the contract with reference to such language, and its effect upon the rights of these parties. The employer's interpretation of the contract was made clear to each appellant, upon his return from the service, in a letter which advised each of them of the number of weeks of wirephoto experience he had, and that the number of weeks he had entitled him to a certain number of years of wirephoto experience at a given rate. The union's interpretation of the contract was made equally clear in a letter to all members, which stated in part as follows: 'Veterans returning to the wirephoto classification should not confuse the scales based on "wirephoto employment" with their seniority dates. The step-up scales are for actual experience as wirephoto operators and time spent in the armed forces is not credited as such.' We can find no evidence in the record of any other intention of the parties than that progression up the step-rate ladder would be based solely upon actual on-

the-job wirephoto experience, and not upon seniority. The appellants do not offer any evidence to support their contention, but merely point to the fact that the contract uses the language 'wirephoto employment' instead of 'wirephoto experience.' Their position is too narrowly confined to be accepted in the light of the demonstrated intention of the parties.

"The step-rate system of compensation is something entirely separate and distinct from seniority. Seniority begins when an employee's pay begins, and continues so long as he is in the employment, regardless of whether he is laid off, on vacation, or (by the terms of the Act under which this suit was brought) in the military service. It results in certain preferential treatment based upon the length of the employee's service. In this case, both appellants admitted that the step-rate provisions were to be distinguished from the seniority provisions, and that there were substantial advantages based on seniority, including assignment of hours, choice of days off, retention of job in the event of a reduction of workers, bidding for vacancies in existing or new assignments, choice of vacation dates, and the payment of a wage differential based on seniority. Appellants admitted that their seniority had not been affected by their military service.

"The step-rate system places a monetary value on experience. Both appellants in this case testified that wirephoto work requires a certain knowledge, dexterity, special skill, and proficiency, which comes only from experience on the job. The appellants contend that, because no test or examination is given before each progression, the resulting pay increases are automatic with the passing of time, and therefore the step-rate system is synonymous with seniority; and they also contend

that the provision of the statute for veterans to be credited with seniority for time spent in military service requires that they be given credit in the step-rate system for their time spent in military service. We cannot follow appellants' contention, because we are convinced that progress in this step-rate system was intended to be based solely upon wirephoto experience. Time spent in the service of our armed forces, however praiseworthy it may be, is not necessarily wirephoto experience in any sense of the word, and we can find no language in the statute which authorizes us to call it such."

See also Nevins v. Curtiss-Wright Corporation, 6 Cir., 1949, 172 F.2d 535, and Selgrat v. Field Enterprises, D.C.Ill.1952, 105 F.Supp. 179. These decisions clearly indicate, as this Court holds, that a returning veteran is not entitled by force of the benefits given to him under the terms of the Selective Service Act, and its successor, to enjoy the salary increases of a step-rate system founded upon actual experience gained by on-the-job employment, when he has in fact gained no such experience while in the military service. The fact that these decisions, with the exception of Selgrat, dealt with the Act prior to its amendment by the addition of (c) (2) to § 459, 50 U.S.C.A. Appendix, does not change their reasoning, for it was said of the Act prior to the addition:

"* * * That discrimination in favor of veterans is as foreign to the purposes of the Act as discrimination against them, the Supreme Court decided when it passed on the issue of 'super-seniority,' Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Trailmobile Company v. Whirls, 331 U.S. 40, 67 S.Ct. 982 [91 L.Ed. 1328]." Siaskiewicz v. General Electric Co., 2 Cir., 1948, 166 F.2d 463, 466.

It can not be supposed that it was the intent of Congress to alter that rule by the addition.

The decisions which the plaintiff has brought to the attention of the Court are not particularly helpful. Suffice it to say that they dealt with problems other than step-rate pay increases, and, in the main, involved benefits dependent upon seniority, the deprivation of which is not alleged by this plaintiff.

■ In the opinion of the Court the findings of fact and conclusions of law expressed in this memorandum opinion are sufficient to meet the requirements of Rule 52(a), Fed.Rules Civ.Proc., 28 U.S. C.A., and the preparation and filing of formal findings of fact and conclusions of law may be dispensed with. Accordingly, it is

■ Ordered and Adjudged that plaintiff take nothing by his complaint and that the action and complaint be dismissed out of this Court. No costs are assessed against the plaintiff because of the provisions of 50 U.S.C.A.Appendix, § 459(d), and the decisions thereunder.