John R. **ALFARONE**, Plaintiff,

v.

**FAIRCHILD ENGINE AND AIRPLANE CORPORATION**, Defendant.

No. 61–C–280.

United States District Court
E. D. New York.

Jan. 3, 1963.

**20**

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for plaintiff, Stanley F. Meltzer, Asst. U. S. Atty., of counsel.

Cleary, Gottlieb & Steen, New York City, for defendant, Gerald E. Murray, New York City, of counsel.

ZAVATT, Chief Judge.

The plaintiff, a veteran of the armed forces of the United States, sues to recover sums allegedly due him pursuant to the Universal Military Training and Service Act, 50 U.S.C.App. § 451 et seq., and more particularly § 459 thereof. Both parties have moved, pursuant to Rule 56 Fed.R.Civ.P., for summary judgment.

There is no dispute as to the following facts: The plaintiff entered the employ of the defendant in its Engine Division in January of 1952 and continued in the defendant's employ until June 1955 when he was inducted into the armed forces. At that time there was in effect a labor contract between the defendant and Local 661, UAW–CIO dated February 16, 1953, hereinafter referred to as the "1953 Union Contract". It provided for 10 labor grades and specified the ranges of rates of pay. Article V, Section 5. It provided for pay increases within the rate ranges for each such grade at six month intervals. Article V, Section 5–C. A Section 5–C increase is described therein as an "Automatic Increase." But an employee is not entitled thereto if his "absences from scheduled work total in the aggregate forty (40) hours or more" or "he has been on leave of absence or on lay-off." In such cases "his progression shall be correspondingly retarded." Article V, Section 5–C(c). Nor is he entitled to this "Automatic Increase" at the expiration of a normal six months' period if he is reclassified to a different job classification which results in (1) his being "upgraded" (i. e. being paid at a higher grade level in his new job than he was in his former job classification), (2) his being "promoted" (i. e. reclassified in a higher labor grade though he does not possess seniority status in that higher slotted job classification), (3) his reclassification is a "downward reclassification" (i. e. he is reclassified from a job classification in one labor grade to a job classification in a lower labor grade), or (4) if he is "demoted". Sections 5–C, 9 and 10(a), (b), (e), (f). In these instances the six months step increase is postponed, in that the period begins to run from the date of his reclassification. Section 5–C(a). By Article VII, Section 16, the parties to the contract agreed "to comply with the terms of the Selective Service Act of 1948, as amended."

This 1953 Union Contract was renewed March 14, 1956. Insofar as the terms thereof are material, they do not differ from those of the 1953 Union Contract.

Shortly after this 1953 Union Contract was entered into, the defendant prepared an explanation of the contract "to assist all members of Supervisory Management in understanding and administering this Labor Agreement." It records the fact that, prior to January 1952, pay increases were granted by the defendant to an employee on the basis of a Merit Rating system; that, thereafter, the Merit Rating system was replaced with one of

Automatic Progression which is reflected in Article V of the 1953 Union Contract:

"You will recall that in January 1952, the Company agreed to replace its previous Merit Rating system with one of Automatic Progression. While we do not believe that 'Automatic Increases' properly reward the conscientious employee as compared with the less deserving one, the system now in effect has the advantage of freeing the supervisor from the time he formerly devoted to Merit Rating and provides him more time to do a sound job of supervision. This sub-paragraph provides for automatic increases each six months until the maximum of the rate range is reached, by 4¢ increases for the five lower labor grades and 5¢ increases to the top five labor grades, but only to employees after having reached the minimum. If, during such six months' period, an employee has been reclassified either 'horizontal' or by a 'down-grading', he gets his next appropriate increase at the same time he would have had he not been reclassified; if, however, his reclassification is an 'upgrading', 'promotion', 'downward reclassification', or a 'demotion', he does not get his next increase until six months after the date of such classification."

Sometime prior to his entry into the military service, the plaintiff was demoted from Labor Grade 6 (Bucket Polisher 1st Class) to Labor Grade 7 (Comparator Operator) because of slowness in the plant. When he left the employ of the defendant to enter military service on June 15, 1955, he was employed as a Bench Hand 2nd Class at the rate of pay of $1.89 per hour, a rate which represented Step 4 within the rate range for the relevant Labor Category. The rate range in that Labor Category extended from $1.73 per hour, the minimum, in four subsequent Steps of $0.04 each to $1.89 per hour, the maximum. As of

June 15, 1955 (although the plaintiff was then working as a Bench Hand 2nd Class) he also qualified as a Comparator Operator Step 3 and also as a Bucket Polisher, First Class, Step 1. As of that date he had also acquired Seniority Rights as defined in Article VII of the 1953 Union Contract in all of these Job Classifications.

The plaintiff was re-employed upon his return from military service on April 22, 1957, as a Comparator Operator, Step 3, at $2.06 per hour, the rate of pay for Step 3 in the Rate Range at that time in that Labor Category. He already qualified for the Step when he entered the military service on June 15, 1955. Upon his re-employment he received the Seniority Rights, as defined in Article VII of the 1953 and the 1956 union contracts. These are the Seniority rights which would have accrued to him had he been in the active employ of the defendant during the period of his military service. Upon his re-employment, however, he did not receive what he claims is the Step Increase to which he was then entitled. The plaintiff claims that, upon his re-employment, he should have been re-employed as a Comparator Operator Step 6 at a rate of pay of $2.18 per hour instead of as a Comparator Operator Step 3 at a rate of pay of $2.06 per hour. Had the plaintiff been in the active employ of the defendant as a Comparator Operator from June 15, 1955 (the date when he entered military service) to April 22, 1957 (the date when he was discharged from military service and re-employed) and had he not been demoted he would have reached Step 6 in the Rate Range as of the date of his re-employment. The parties agree that the sole question in dispute is whether the plaintiff was entitled to be re-employed at the rate of $2.06 per hour or at the rate of $2.18 per hour. The Engine Division of the defendant terminated its operations in January of 1959. The plaintiff contends that he is entitled to

recover the difference between what his salary was and what his salary should have been during the period April 22, 1957 to January 1959.

The plaintiff and the defendant have argued in support of their respective motions for summary judgment upon the assumption that this case involves only a pure question of law; that all of the necessary facts have been stipulated; that there remains for determination only the interpretation of 50 U.S.C.App. § 459(b) (B) (i), (c) (1) and (c) (2).[1] The plaintiff contends that, upon his re-employment, he was not "restored　*　* to a position of like seniority, status and pay," as required by 50 U.S.C.App. § 459(b) (B) (i); that, by not receiving the Step Increase from 3 to 6, he was not "restored without loss of seniority," as required by 50 U.S.C.App. § 459(c) (1); that, therefore, when he was re-employed he was not "restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment," as

required by 50 U.S.C.App. § 459(c) (2). The defendant points out that the plaintiff has received his full seniority rights under the terms of the Union Contract; that, in fact, the plaintiff received higher wages upon his re-employment; that the Step Increase from 3 to 6 claimed by the plaintiff is not an incident of seniority nor is it based upon the mere passage of time but, rather, upon actual work experience; that this Step Increase does not come within "status　*　*　* he would have enjoyed if he had continued" in his employment; that it is not an increase that would necessarily have followed continuous employment, had the plaintiff not entered the armed forces; that the defendant did treat the plaintiff as one on furlough or leave of absence, as required by 50 U.S.C.App. § 459(c) (1); that, by re-employing the plaintiff as it did, the defendant did not violate any of the provisions of the Universal Military Training and Service Act relied upon by the plaintiff.

A study of the reported cases in this area suggests that the court cannot interpret these statutes *in vacuo;* that the statute must be interpreted not only

1. "(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

　*　　*　　*　　*　　*

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

　*　　*　　*　　*　　*

"(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

in the light of the language of the Union Contract (which is before the court) but also in the light of the objectives thereof and its administration. The plaintiff claims that the step increase from step 3 to step 6 is one that accrued to him by the mere passage of time; that the period of his military service must be deemed a part of his period of employment by virtue of 50 U.S.C.App. § 459(c)(2); that that provision of the law entitled him to the step increase he demanded upon his re-employment. The defendant, on the other hand, contends that the plaintiff, while in the military service, was on leave of absence within the meaning of 50 U.S.C.App. § 459(c)(1) and that the 1953 Union Contract specifically provides in Article V, Section 5-C(c) that employees on leave of absence are not entitled to step increases; that the step increases provided for in the contract contemplated and were intended to apply only to those employees who were in the actual employ of the defendant and thereby acquired the increased skills upon the basis of which the step increases were granted. In support thereof the defendant points to the rationale of the so-called Step-Rate system which supplanted its Merit Rating system. The defendant contends, in sum, that the system incorporated in the 1953 Union Contract provided for step increases not on the basis of employees merely marking time for a given period but, rather, that it is a reward for accomplishment, for increased skill and efficiency, which are the products of on the job performance.

Somewhat comparable cases, involving so-called Step-Rate systems of pay increases and 50 U.S.C.App. § 459 are Moe v. Eastern Air Lines, Inc., 246 F.2d 215 (5th Cir., 1957); cert. denied 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958); Altgens v. Associated Press, 188 F.2d 727 (5th Cir., 1951); Nevins v. Curtiss-Wright Corp., 172 F.2d 535 (6th Cir., 1949); Brown v. Denver Post, Inc., 145 F.Supp. 351 (D.Col.1956) and Selgrat v. Field Enterprises, Inc., 105 F.Supp. 179 (N.D.Ill.1952). In Moe, the court found that the collective bargaining agreement covering pilots and co-pilots based wage increases on length of service rather than proficiency; that the defendant discriminated against the plaintiff in that it gave wage increases to other pilots based on length of service and computed their time in the military service as service with the company even though some of these employees did not serve as pilots in the military service— whereas the defendant refused to give equal treatment to the plaintiff's time in the military service. Upon the evidence, the Court of Appeals reversed the judgment of the District Court which had proceeded on the theory that length of service, per se, was a measure of proficiency. "It is true, that a benefit which accrues by virtue of the increased skill and ability that comes from experience on the job is not covered by the Act. Military service is not a substitute for proficiency." Moe, supra, 246 F.2d at p. 220. It held that the plaintiff was entitled to the wage increase based upon length of service (including time in the military service) because it found that "Under the contract itself, it seems to us that the increased wage rate was not intended to be related peculiarly to proficiency." Ibid. We see here an example of the application of one of the two governing principles in determining the rights of a veteran-employee to step-rate increases i. e. that such a veteran is entitled to such increases if they were not designed to reward an employee for skill and proficiency flowing from actual on-the-job work experience.

In Altgens, supra, the court found that the parties to the union labor contract had interpreted it as calling for actual on-the-job experience in order to entitle employees to the step increases. It found that "wirephoto work requires a certain knowledge, dexterity, special

skill, and proficiency, which comes only from experience on the job" and that, despite the fact that no test or examina-tion was given before each progression, the resulting pay increases were not automatic with the passing of time. 188 F.2d at pp. 728–729. The court held, therefore, that the plaintiffs were not entitled to the claimed step-increases under 50 U.S.C.App. § 459(c) (1). "The Act by its terms requires the returning serviceman to be 'considered as having been on furlough or leave of absence' during his military service, and clearly does not require him to be put in a posi-tion, when he returns, that he could not have attained had he not had a certain amount of experience." 188 F.2d at p. 729.

Nevins, supra, involved an industry similar to that of the defendant in the instant case and a replacement of a merit system by a step-rate increase sys-tem, as is the situation in the instant case. The court found that this new wage increase system "was geared to the average time required by employees to learn their crafts." It adopted the view of the National War Labor Board that "These [step increases] are not really wage increases and the company does not look upon them as such. They are rather promotional advances representing aver-age progress which avoids the cumber-some administration and computation of merit increases which otherwise would be necessary to take account of such ad-vancement." 172 F.2d at p. 537. In arriving at its determination that the step-rate increase system was not a system of mere automatic progression based only upon the passage of time, the court pointed out a provision of the labor contract which empowered the de-fendant employer to reclassify an em-ployee, who failed to meet the required standards for the job he was holding, to another occupation for which he could qualify and stated, in effect, that this provision demonstrated that "the pay

rate of an employee remaining continu-ously in the company's service is not to be increased automatically * * *." 172 F.2d at p. 538. Brown, supra, and Selgrat, supra, are consistent with the rationale of Moe, Altgens and Nevins hereinabove discussed.

■ The plaintiff relies heavily upon Borges v. Art Steel Co., 246 F.2d 735 (2d Cir., 1957). There eleven laborers in the employ of the defendant were re-employed as such upon their release from the armed forces. While they were in the military service the defendant had granted a pay increase across the board to all of its employees who had a speci-fied number of hours of "consecutive working service" immediately preceding the date of the increase. These em-ployees instituted an action to enforce what they deemed to be their § 459 rights. In affirming the District Court, 143 F.Supp. 169, the Court of Appeals of this Circuit noted a distinction be-tween sub-divisions (c) (1) and (c) (2) of § 459 because (c) (1) states that em-ployees in service are viewed as on "fur-lough or leave of absence" whereas (c) (2) relates to treating an employee as "if he had continued in such employment continuously." The court limited the application of (c) (1) to "a fairly nar-row group of economic advantages whose common quality was that they were mis-cellaneous fringe benefits not usually re-garded as part of 'pay,' 'status,' or 'sen-iority.'" 246 F.2d at p. 738. It con-strued "seniority" as used in the Act as covering "benefits flowing from the length of tenure on the job, whether these benefits consist of the right to ad-vance to a better job classification * * or the right to better working hours and less chance of layoff, * * * or the right to pay increases * * *." As to the latter, it held that only pay increases that flow from the passage of time come within "seniority". "Where pay in-creases or promotions are awarded on the basis of skill or merit, and not on the

basis of the mere passage of time, they cannot be regarded as the fruits of seniority, * * *." 246 F.2d at p. 739. The court found that the plaintiffs were entitled to the pay increase because "the only requirement for the increase was to have actually been on the job for a length of time. Inasmuch as these eleven plaintiffs were employed as laborers and the increases reached all employees of all degrees of skill, there can be no serious contention that the requirement of actual service was designed to reward proficiency acquired through experience, rather than mere seniority." 246 F.2d at p. 739. Borges, supra, is consistent with the rationale of Moe, Altgens and Nevins, supra, in that it holds that the Act does not entitle an employee to wage increases designed to reward proficiency acquired through actual on-the-job experience.

From the motion papers before the court it cannot be determined whether or not the step-rate system in the instant case is geared to skill and proficiency flowing from actual job experience or is geared to the mere passage of time. The mere fact that this Step-Rate system was adopted as a replacement for the previous Merit Rating System does not necessarily bring this case within Nevins v. Curtiss-Wright Corp., supra. Furthermore, none of the cases hereinabove referred to were decided merely upon moving papers. In each case there was a full trial. Nor can it be determined, at this juncture, whether in fact the Step-Rate system in this case vested a discretion in the employer to deny these increases by demoting employees lacking in skill. See McKinney v. Missouri-Kansas-Texas R. R. Co., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958). It would appear that the issues in this case can be determined properly only after a trial on the merits which would include an inquiry, beyond the mere letter of the contract, into how, in fact, the contract was administered.

Both motions for summary judgment are denied.