Dear Mr. Crawford:
This responds to your request for an opinion of this office on certain matters pertaining to the Military Services Relief Act (MSRA) of Louisiana, La.R.S. 29:401-425, and its relation to the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301-4333.
You advise that you are the legal assistance attorney for the Commander, Eight Coast Guard District, which comprises some twenty-six states, including Louisiana. Further, that the United States Coast Guard, as a uniformed service, is a branch of the military and an armed force of the United States at all times pursuant to 14 U.S.C. § 1.
You point out that there are several thousands of Reservists from all the Armed Forces, and State National Guardsmen residing in Louisiana, who are Louisiana citizen-soldiers. These Louisiana citizens have civilian jobs, which they must sometimes leave to serve their country and/or state, either voluntarily or involuntarily. Among the major Federal statutes affording these members Federal protections, as regards their civilian jobs are: (i) the Soldiers' and Sailors' Civil Relief Act (50 U.S.C. App § 501 et seq), hereinafter "SSCRA" and, (ii) what most Reservists and National Guardsmen probably know best, the Uniformed Services Employment and Reemployment Rights Act (38 U.S.C. § 4301
through 4333), hereinafter "USERRA". There has been extensive litigation involving these Federal statutory protections afforded Reservists and Guardsmen.
The State of Louisiana has promulgated a similar statutory scheme to protect Reservists and Guardsmen in Louisiana in its Military Service Relief Act La.R.S. 29:401-425) hereinafter "MSRA". To paraphrase the extent of statutory privileges and protections due Reservists and Guardsmen under MSRA: MSRA will be construed liberally for the veteran's benefit and is intended to supplement any rights that persons in military service have under any specific federal statutes, particularly, SSCRA and USERRA, and any other state laws. See La.R.S. 29:402.
This matter and future litigation will be cases of first impression on the major issues arising under the MRSA. There have been no court cases interpreting its provisions, other than some litigation pertaining to procedural matters addressed in a Federal District Court, which did not address any of the MSRA substantive provisions. See Robert I. Garcia v.Ecotech, Inc., 786 F. Supp. 571 (M.D. LA 1992).
It should be noted that the various MSRA provisions were drafted to be broader in some respects than the federal statutory protections under USERRA for Federal Military Reservists and National Guardsmen regarding their military service and their civilian employment.
Both USERRA (§ 4302(a) and (b)) and MSRA (§ 402 D and E) provide that neither statutory (federal and state) scheme "shall supercede, nullify, or diminish any Federal or State law", contract, agreement, policy, plan, or practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter (Part)". Both the State and Federal statutory schemes provide that the respective law " supersedes any State (local) law, contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."
MSRA also specifically addresses employers who are governmental bodies, as well as students who are Reservists and Guardsmen, as well as other related matters. This Opinion will only deal with the specific questions set forth below which pertain to civilian employers and their employees.
With a civilian employer, mere written or verbal notice to a supervisor of the member's desire to return to work may not be sufficient. The member should report back to work, or "apply" for reemployment, depending on the length of active duty. USERRA § 4312(e) and MSRA § 410(E) has members "reporting back to work", if their active duty was less than 31 days and, for members whose active service is more than 30 days, the members shall submit an application for reemployment. Failure to timely report back to work, or submit an application for reemployment does not automatically forfeit the member's USERRA or MSRA rights, but subjects the service member/employee to the employer's policy guidance and rules of conduct for late or absent employees.
As there has been extensive federal litigation on providing support to Reservists and National Guardsmen under USERRA, and its statutory predecessors, this Opinion will review the USSERA statutory language, and its predecessor case law vis-´-vis the language of MRSA and other law, materials and cases to attempt to properly evaluate the questions raised in the request. Further factual analysis, on a case-by-case basis, must factor in the review of the private employer-employee agreements of employer policies and practices, if these add greater rights than the minimum floor of protections provided by USERRA and MSRA; however, these employment agreements, practices or policies can not limit in any manner the rights or privileges specified under USERRA or MSRA.
Questions Presented
1. Does a member's civilian salary increase as if he never left his civilian job pursuant to MSRA § 410 L?
2. During a member's active duty time, can he contribute to his 401(k) retirement plan, and will the contributions escalate along with his civilian salary pursuant to MSRA §§ 411 — 413? Does the right and duty of contribution vest during military service, or does it vest solely upon returning to his prior civilian employment?
3. During a member's active duty time, can he demand that the employer contribute to his Cash Balance Plan and are the contributions increased along with his civilian salary pursuant to MSRA §§ 411 — 413?
4. Does a member's civilian vacation time accrue while serving on active duty pursuant to MSRA § 406?
5. Can a member participate in his employer's group disability insurance while on active duty pursuant to MSRA § 407?
6. Who enforces the Military Service Relief Act for the member?
Responses under State and Federal Law
Question 1: Does a member's civilian salary increase as if he never lefthis civilian job pursuant to MSRA § 410 L?
The purpose of the Louisiana MSRA, La.R.S. 29:401, et seq., is to prevent members of the uniformed services from suffering economic or other penalties at their civilian jobs as active duty service. La.R.S. 29:402(A). MSRA supplements any rights the member may have under, inter alia,
USERRA. See MSRA § 402(C). I note that MSRA § 402(C) reflected a typographic error in USERRA's Federal Title of 43, when it should be Title 38 of the United States Code.
With respect to employment by agencies of the State, there are specific provisions which govern public retirement systems, credit, etc. See La.R.S. 29:411 et seq.
As regards private employment, where there is no specific authority set forth in the Louisiana Act (MSRA), members, employers and Courts should look to the USERRA statutory language and jurisprudence, and the contract of employment (or union agreements) for guidance, as well as the company's policies and practices to fashion an answer to specific questions. The private contractual agreements of employment, as well as the company's policies and practices between the employer and the Reservists and National Guardsmen cannot provide lesser privileges or protections under USERRA or MSRA, but they can provide more privileges and protections.
As regards the question as to whether or not a member who returns to his civilian job can expect to have his salary adjusted upwards as though he never left for active duty, it is our opinion that MSRA § 410 (L), like the USERRA, acts to increase the member's salary as though he never left for active duty. See MSRA § 410 (L); USERRA38 U.S.C. § 4316(a); Fishgold v. Sullivan Drydock RepairCorporation, et al, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).
MSRA, La.R.S. 29:410 (L) states that:
 A person who is reemployed under this Part is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.
USERRA, 38 U.S.C. § 4316(a) states that:
 A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.
These statutes echo the earlier Selective Training and Service Act of 1940, the effect of which was to, in the words of the United States Supreme Court, put the returning employee ". . . back on the seniority escalator at the precise point he would have occupied had he kept his position continuously during the war." Fishgold, 328 U.S. 284-285.
One of the predecessor statutes to USERRA was the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021(b)(1) (1982). It provided that a veteran who is reemployed after satisfactory completion of military duty "shall be so restored or reemployed without loss of seniority." Lang, et al v. Great Falls School District No. 1,842 F.2d 1046, 1048 (9th Cir. 1988), noted the following discussion used to analyze whether salary was a "seniority" benefit to be protected by the statute for any increases, with a two pronged analysis:
 The Act is to be liberally construed for the benefit of returning veterans. Coffy v. Republic Steel Corp., 447 U.S. 191, 196, 65 L.Ed.2d 53, 100 S.Ct. 2100
(1980). Under the Act, the returning veteran should step back onto the seniority escalator at the "precise point he would have occupied had he kept his position continuously during the war." Fishgold v. Sullivan Drydock Repair Corp., 328 U.S. 275, 284-85, 90 L.Ed. 1230, 66 S.Ct. 1105 (1946).
 * * *
 If a benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service, it is a `perquisite of seniority.' If, on the other hand, the veterans' right to the benefit at the time he entered the military was subject to a significant contingency, or if the benefit is in the nature of short-term compensation for services rendered, it is not an aspect of seniority within the coverage of Section 9. Alabama Power Co. v. Davis, 431 U.S. 581, 589, 52 L.Ed.2d 595, 97 S.Ct. 2002 (1977).
 * * *
 Advancement on the salary schedule does not fit neatly into either category of the second prong. Nevertheless, we must determine whether the nature of advancement is a reward for length of service or short-term compensation for services rendered. We have not addressed the question previously, and there is no clear weight of authority. n2 In considering the nature of advancement here, we are guided by several Supreme Court decisions that have considered the nature of other benefits. n3 See Accardi v. Pennsylvania R. Co., 383 U.S. 225, 230, 15 L.Ed.2d 717, 86 S.Ct. 768 (1966) (severance pay a perquisite); Foster v. Dravo Corp., 420 U.S. 92, 101, 43 L.Ed.2d 44, 95 S.Ct. 879 (1975) (vacation benefits not a perquisite); Alabama Power Co. v. Davis, 431 U.S. 581, 594, 52 L.Ed.2d 595, 97 S.Ct. 2002
(1977) (pension fund payments a perquisite); Coffy v. Republic Steel Corp., 447 U.S. 191, 206, 65 L.Ed.2d 53, 100 S.Ct. 2100 (1980) (supplemental unemployment benefits provided pursuant to a Collective Bargaining Agreement are prerequisites); see also Austin v. Sears, Roebuck Co., 504 F.2d 1033 (9th Cir. 1974) (vacation benefits).
 Some courts have treated pay increases as a perquisite of seniority. See United States ex rel. Adams v. General Motors Corp., 525 F.2d 161 (6th Cir. 1975); Hatton v. Tabard Press Corp., 406 F.2d 593 (2d Cir. 1969); Borges v. Art Steel Co., 246 F.2d 735 (2d Cir. 1957); Moe v. Eastern Air Lines, Inc., 246 F.2d 215
(5th Cir. 1957), cert. denied, 357 U.S. 936, 2 L.Ed.2d 1550, 78 S.Ct. 1380 (1958); Spearmon v. Thompson, 167 F.2d 626 (8th Cir.), cert. denied, 335 U.S. 822, 93 L.Ed. 376, 69 S.Ct. 44 (1948); Adams v. Indiana, 113 LRRM 3021 (S.D.Ind. 1983); Beckley v. Lipe-Rollway Corp., 448 F. Supp. 563 (N.D.N.Y. 1978); Greiling v. Rockford Newspapers, Inc., 95 L.R.R.M. 2658 (N.D.Ill. 1977); Nichols v. Kansas City Power Light Co., 391 F. Supp. 833 (W.D.Mo. 1975); Alfarone v. Fairchild Stratos Corp., 218 F. Supp. 446 (E.D.N.Y. 1963).
 Others have not. See Jackson v. Beech Aircraft Corp., 517 F.2d 1322 (10th Cir. 1975); Altgens v. Associated Press, 188 F.2d 727 (5th Cir. 1951); Nevins v. Curtis-Wright Corp., 172 F.2d 535 (6th Cir. 1949); Harvey v. Braniff Int'l Airways, 164 F.2d 521 (5th Cir. 1947); Brown v. Denver Post, 145 F. Supp. 351
(D.Colo. 1956); Selgrat v. Field Enters., 105 F. Supp. 179
(N.D.Ill. 1952); Huffman v. Norfolk Western Ry. Co., 71 F. Supp. 564 (W.D.Va. 1947).
 The reemployment provisions of section 2021 date to the Selective Training and Service Act of 1940, Pub.L. No. 76-783, 54 Stat. 885. Trulson v. Trane Co., 738 F.2d 770, 773 n. 4 (7th Cir. 1984). Although the statutory provisions have varied somewhat over the years, they are sufficiently similar that cases decided under the prior statute are authoritative here. See Coffy, 447 U.S. at 194 n. 2; Trulson, 738 F.2d at 773 n. 4.
The case law under USERRA and its predecessors also indicates the areas of possible salary increases, if allowable, and they clearly turn on employer practice, policy and contracts/agreements. In one case, a Veteran was held not entitled to include his service in the Army for the purpose of determining his rate of pay where periodic pay raises were determined on the basis of merit and proficiency at particular job and not on the basis solely of seniority in a particular position. See
Nevins v. Curtiss-Wright Corp., 172 F.2d 535 (6th Cir. 1949). However,
returning veterans are entitled to be re-employed at the wage rate they would have attained if they had remained in continuous employment during the time spent in military service, where merit increases are virtually automatic in actual practice. Nichols v. Kansas City Power Light Co,391 F. Supp. 833 (W.D. Mo 1975). Where an employer violated the predecessor to the current statute by refusing to credit a reinstated veteran with time spent in military service for pay purposes, where pay increases were generally geared to the number of years on the job and annual reviews were confined to granting increases or discharging employees for unsatisfactory performance, pay increases in such circumstances were held to depend essentially upon continuing employment, not upon exercise of management discretion. Hatton v. TabardPress Corp., 406 F.2d 593 (2nd Cir. 1969).
A search for cases involving the MSRA revealed that as of June, 2001, no Louisiana Courts of Appeal have interpreted that provision of MSRA. Thus, it is our opinion that, regarding the increase of salary for a member during active duty, the principles set forth by the MSRA and USERRA mandate that the member's salary be advanced as it would have had the member never left for active duty. As MSRA § 402(B) states: "The provisions of this Part shall be liberally construed for the benefit of those called to serve their country in the armed forces."
As the language in USERRA and MSRA is practically verbatim in this area, the case law, and its guidance under the USERRA, and its predecessor jurisprudence, and the actual employer/employee agreements, as well as the employer's practices and policies, offer a guide for resolving disputed issues between the employer and the employee, with any doubt or reading of a provision to "be liberally construed for . . ." the employee's benefit. See MSRA § 402 (B).
Question 2: During a member's active duty time, can he contribute to his401(k) retirement plan, and will the contributions escalate along withhis civilian salary pursuant to MSRA §§ 411 — 413? Does theright and duty of contribution vest during military service, or does itvest solely upon returning to his prior civilian employment?
This question asks whether, or not, the member can contribute to his retirement fund during his active duty service, and, if so, are the contributions to the retirement plan subject to the same escalation as the member's salary.
It is our opinion that the MSRA allows the member to continue participating in, and contributing to, his qualified retirement plan, while the member is on active duty. It should be noted at the outset that while the right to continue his participation vests at the start of military service, the right to have his military service, up to four years, count towards retirement and retirement plans only vests once the member completes military service and applies for reemployment. La.R.S.29:411 (A).
It should be noted, however, that MSRA § 412 (entitled "Contributions, payment during military Service") provides that the member:
 " . . . may, at his option, pay the required employee contributions to the retirement system, pension fund, or employee benefit plan applicable to his employment, during his period for service in the uniformed services and if the payment of contributions is permitted by the Internal Revenue Code, if the plan is a qualified plan . . . Upon such receipt (i.e., of employee's contributions), the employer shall remit the employee contributions to the applicable system or plan, including the employer contributions that would have been contributed on behalf of the employee. The employee shall notify his employer of his election to pay the required contributions to the applicable system or plan at the time he enters service in the uniformed services." (Emphasis added).
If the employee elects to continue his contributions to his retirement plan, while on active duty, and notifies the employer and makes the employee contributions in the manner specified, the employer is bound to remit the member's contributions to the fund and to make whatever employer contributions the employer would have done had the member not gone on military service. If the member elects to continue his participation, he must notify his employer at the start of military service.
The employee share of contributions made while on active duty should rise, as his salary does and in the same manner as specified and provided by the employer for all other employees of that Reservists' or Guardsmen's seniority, status and salary.
USERRA does not provide an employee contribution scheme while the employee is on active duty equivalent to MSRA. USERRA only allows an employee to make retroactive contributions when he returns to his employer after his military service. See USERRA § 4318. Thus, the statutory language under MSRA § 412 is broader than the USERRA provisions, and therefore, literally, MSRA grants greater rights than USERRA, and is to be liberally construed to the benefit of the employee. See MSRA § 402 B.
USERRA § 4318 (a) and (b)(2) allows the "escalator principle" to all kinds of pension plans, including defined contribution plans as well as defined benefit plans. USERRA allows returning members to makeretroactive contributions to such plans. USERRA allows this contribution when member comes back from active duty service. USERRA § 4318 (b)(3)(A) indicates that the employee (and employer contributions) to these pension plans are computed upon what the employee would have earned in the civilian job had he remained employed continuously (with salary increases possibly impacting these calculations), not what they earned in the uniformed services.
Furthermore, USERRA § 4318 (b)(2) allows these retroactive contributions, without interest, and that the maximum allowable period for the employee to make these back contributions is three times the active duty period, not to exceed five (5) years. Thus, an employee can theoretically make his retroactive contributions on the first day back from his active service, or, the employee may have at least the above extended period of interest free time to make his contributions (up to three times the period of active service, but not more than five years).
MSRA § 411(B) notes that the employee shall not receive more than four years of military service credit in the retirement system, pension fund, or the employee benefit plan. USERRA § 4318 does not set a limit on the years of creditable military service as does MSRA § 411 (B), and it is our opinion that the period under USERRA, in the absence of a specific limit, is set at the maximum allowable under USERRA of five years, or for such longer periods as the employer and employee pension, benefits or retirement plans may allow. USERRA 4318(B)(2).
As noted above, to obtain credit for military service vis-á-vis a member's civilian retirement plans, the member must honorably complete his service and apply for reemployment (or return to work) with his pre-service employer. MSRA § 411 (A). Under USERRA, the member is responsible for applying for reemployment pursuant to the policies and procedures of the employer. See, e.g., McGuire v. United Parcel Service,152 F.3d 673 (7th Cir. 1998).
It is to be noted in passing that MSRA 412 allows an employee to pay required employee contributions to the retirement system, pension fund or employee benefit plan if permitted by the Internal Revenue Service (hereinafter AIRS) as a "qualified plan". The IRS provisions for employer pension (401(k) or other benefits) plans only specifically address USERRA, and not the MSRA provisions. See Title26 U.S.C. § 414(u). Thus, any IRS limiting provisions under Title26 U.S.C. § 414(u) regarding the Federal statutory scheme of USERRA pertains solely to USERRA, and not the State provisions under MSRA. Whatever enlargements or constraints of privileges under USERRA for such "predecessor employer" pension plans noted in the above citation are seen as guidance, as the employee's rights seem to be expanded under MSRA. In the event the IRS issues its guidance for the State MSRA provisions for qualified plans, this area would be subject to review at that time.
Question 3. During a member's active duty time, can he demand that theemployer contribute to his Cash Balance Plan and are the contributionsincreased along with his civilian salary pursuant to MSRA §§ 411— 413?
The third question asks whether or not an employer must continue to make contributions to the member's "cash balance plan" during the member's active duty service. It is our opinion that such contributions, like any other benefit available to employees, should not be affected by the member's military service.
By way of definition, a cash balance plan is one of several "hybrid" benefit plans offered to employees as alternatives to more traditional retirement plans. The cash balance plan ". . . defines an employee's benefit as the amount credited to an account" and it ". . . does not depend either on the employer's contributions to the plan or on the investment performance of the plan's assets. . . ." See, http://www.eric.org/cashbalancebrief.htm. This web site is the ERISA Industry Committee, which is an association of some of America's largest employers committed to the advancement of voluntary retirement and other employee benefit plans. The ERISA Industry represents the employer's interests concerning employee benefits matters, and advocate for the same before Congress, regulatory agencies and the courts.
Since cash balance plans are, by their vary nature, a hybrid, careful reading of the plan itself for the employees will be essential to determine the exact level or rights, privileges or constraints that are to be afforded the member, during and upon his return from his active duty.
There is no statutory language which indicates that a cash balance plan is excluded from the protections guaranteed by the MSRA. The cash balance plan seems to fall under 29 U.S.C. § 1002(34), rather than § 1002(35), and is thus governed by MSRA § 413 (B). This would mean that the member is entitled to a credit towards retirement. Further, MSRA § 411 (A) guarantees to the member the same benefits he would have ordinarily received. Finally, USERRA § 4318(b)(1) provides that:
 [a]n employer reemploying a person under this chapter shall, with respect to a period of service described in subsection a(2)(B), be liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits described in subsection (a)(2) and shall allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service.
From these provisions, is our opinion that the employer is liable for continuing its contributions to the member's "cash balance plan."
If, under the employee's cash balance plan, the employee is not required to contribute to the plan, the obligation of the employer contributions, or the employer crediting toward the employee's cash balance plans, remains unchanged.
With the above said, however, La.R.S. 29:412, entitled "Contributions, payment during military Service" provides:
 " Any employee may, at his option, pay the required employee contributions to the retirement system, pension fund, or employee benefit plan applicable to his employment, during his period for service in the uniformed services and if the payment of contributions is permitted by the Internal Revenue Code, if the plan is a qualified plan. . . . Upon such receipt (i.e., of employee's contributions), the employer shall remit the employee contributions to the applicable system or plan, including the employer contributions that would have been contributed on behalf of the employee.
 The employee shall notify his employer of his election to pay the required contributions to the applicable system or plan at the time he enters service in the uniformed services." (Emphasis added).
If the employee elects to continue his contributions to his retirement plan, or cash balance plan while on active duty, and notifies the employer and makes the employee contributions in the manner specified, the employer is bound to remit the member's contributions to the fund and to make whatever employer contributions the employer would have done had the member not gone on military service. If the member elects to continue his participation, he must notify his employer at the start of military service.
The employee share of contributions made while on active duty should rise, as his salary does and in the same manner as specified and provided by the employer for all other employees of that Reservists' or Guardsmen's seniority, status and salary.
USERRA does not provide an equivalent employee contribution scheme whilethe employee is on active duty as does MSRA. USERRA only allows anemployee to make retroactive contributions when he returns to hisemployer after his military service. Thus, the statutory language under MSRA § 412 is broader than the USERRA provisions, and therefore, literally, MSRA grants greater rights than USERRA.
USERRA § 4318 (a) and (b)(2) applies the "escalator principle" to all kinds of pension plans, including defined contribution plans as well as defined benefit plans. USERRA allows returning members to makeretroactive contributions to such plans when the member returns from active duty service. USERRA § 4318(b)(3)(A) indicates that the employee (and employer contributions) to these pension plans are computed upon what the employee would have earned in the civilian job had he remained employed continuously, not what they earned in the uniformed services.
Furthermore, USERRA § 4318 (b)(2) allows these retroactive contributions, without interest, and that the maximum allowable period for the employee to make these back contributions is three times the active duty period, not to exceed five (5) years.
MSRA § 411 (B) notes that the employee shall not receive more than four years of military service credit in the retirement system or pension fund, or the employee benefit plan. USERRA § 4318 does not set a limit on the years of crediting military service as does MSRA § 411 (B), and it is our opinion that the period under USERRA, in the absence of a specific limit, is set at the maximum allowable under USERRA of five years, or for such longer periods as the employer and employee pension or retirement plans may provide.
As noted above, to obtain credit for military service vis-á-vis a member's civilian retirement plans, the member must complete his active duty service and apply for reemployment with his pre-service employer. See MSRA § 411(A) Under USERRA, the member is responsible for applying for reemployment pursuant to the policies and procedures of the employer. See, e.g., McGuire v. United Parcel Service, 152 F.3d 673 (7th Cir. 1998).
Question 4: Does a member's civilian vacation time accrue whileserving on active duty pursuant to MSRA § 406?
The fourth question is whether or not a member's civilian leave accrues while the member is on Active Duty. It is the our opinion that a member's civilian leave continues to accrue while the member is on active duty.
MSRA § 406 (A) and (C) clearly state that: "Any employee who leaves employment in order to perform service in the uniformed services shall betreated as being on military leave of absence during the period ofservice in the uniformed services, provided that he applies for reemployment in accordance with MSRA § 410" and "[an] employee shall continue to accrue sick leave, annual leave, vacation leave, or military leave on the same basis as he would have accrued such leave during theperiod of service in the uniformed services." (Emphasis added). USERRA, which serves as a floor, not a ceiling, for comparison with the MSRA, defines a "benefit of employment" as "any advantage . . that accrues by reason of an employment contract or agreement . . . and includes . . . vacations. . . ." 38 U.S.C. § 4303(2).
There is no other applicable provision in USERRA which specifically addresses vacation leave (annual leave) in the same manner as MSRA § 406 (A) and (C). It therefore appears that MSRA grants more rights than USERRA in this area. If the employer's policy or agreements or contracts provide that the employee is to be credited vacation time while he is on "military leave of absence", as most Reservists or Guardsmen perform active duty for training services as a matter of course for about two weeks a year, then the same employer policies, rules, agreements and contracts provide the same level of protection and vacation and annual leave accrual even thought the employee goes on active service for periods of time, not exceeding cumulatively five years for that particular employer.
The case law on vacation leave under USERRA and its predecessor statutes is clear: review of the employers' policies and procedures for its personnel and the "accruing and granting" of such annual leave, vacation leave, etc., and any employee contracts, or collective bargaining agreements are all essential for defining eligibility for annual/vacation leave, including how the annual leave/vacation time is calculated and defined, and the period in determining rights of the members returning from active duty. See Foster v. Dravo Corp.,420 U.S. 92, 95 S.Ct. 879 (1975); Franklin J. Austin et al v. Sears,Roebuck and Co., 504 F.2d 1033 (9th Cir. 1974); and Cushnier et al v.Ford Motor Co, et al, 89 F. Supp. 491 (E.D. MI. Jan 25, 1950). In Langet al v. Great Falls School District No 1, id, at
1049, the Court noted that for "seniority benefits", like vacation, if vacation time is viewed (defined by the company) as a form of compensation because of service rendered, or contingent upon specific conditions, then mere passage of time in military service will not grant member extra days; but, if the vacation leave benefits would have accrued, with reasonably certainty, had the employee been continuously employed by the employer, and if it is in a nature of reward for length of service, then the vacation benefit is a `perquisite' of seniority, and the vacation benefits will accrue to the military member.
In Dwyer v. Crosby Co., 167 F.2d 567 (2nd Cir. 1948), the Court noted that USERRA's predecessor statutes may allow the right of employers to deny the employee vacation rights accrual, unless it is an "established rule of the company" to give vacations (vacation accruals) to those who are on "leave of absence."
USERRA § 4316 addresses the benefits of employment and the seniority requirements in the following manner:
 § 4316. Rights, benefits, and obligations of persons absent from employment for service in a uniformed service
 (a) A person who is reemployed under this chapter [38 U.S.C.S §§ 4301 et seq.] is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.
 (b) (1) Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be —
 (A) deemed to be on furlough or leave of absence while performing such service; and
 (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.
 * * *
 (3) A person deemed to be on furlough or leave of absence under this subsection while serving in the uniformed services shall not be entitled under this subsection to any benefits to which the person would not otherwise be entitled if the person had remained continuously employed.
 (4) Such person may be required to pay the employee cost, if any, of any funded benefit continued pursuant to paragraph (1) to the extent other employees on furlough or leave of absence are so required.
 * * *
 (c) A person who is reemployed by an employer under this chapter [38 U.S.C.S §§ 4301 et seq.] shall not be discharged from such employment, except for cause —
 (1) within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days; or
 (2) within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days.
 (d) Any person whose employment with an employer is interrupted by a period of service in the uniformed services shall be permitted, upon request of that person, to use during such period of
 service any vacation, annual, or similar leave with pay accrued by the person before the commencement of such service. No employer may require any such person to use vacation, annual, or similar leave during such period of service.
 Section 4316 is amended by adding at the end the following new subsection: {PUBLIC LAW 106 419 [S. 1402] NOV. 01, 2000} EMPLOYERS REQUIRED TO GRANT LEAVE OF ABSENCE FOR EMPLOYEES TO PARTICIPATE IN HONOR GUARDS FOR FUNERALS OF VETERANS.
 "(e)(1) An employer shall grant an employee who is a member of a reserve component an authorized leave of absence from a position of employment to allow that employee to perform funeral honors duty as authorized by section 12503 of title 10 or section 115 of title 32.
 "(2) For purposes of section 4312(e)(1) of this title, an employee who takes an authorized leave of absence under paragraph (1) is deemed to have notified the employer of the employee's intent to return to such position of employment.".
As there is no Louisiana case law interpreting MSRA § 406, which is apparently slightly more expansive than USERRA's, and its predecessor statutes' case law, it would appear, based upon the MSRA § 402 (B) requirement to liberally construe the statue for benefit of such Reservists and Guardsmen, that vacation time continues to accrue while the member is on active duty, taking into the account the employer's military leave of absence policies, rules, contracts and agreements, and its policies and practices involving the employee.
Question 5: Can a member participate in his employer's groupdisability insurance while on active duty pursuant to MSRA § 407?
The fifth question asks whether or not a member can continue to participate in their employer's group disability insurance. It is our opinion that a member is permitted to maintain his group disability insurance provided that the member gives notice to his employer of his election to continue and the employer timely receives the member's contributions. MSRA § 407 (B).
The MSRA is explicit in its grant of permission to the member to continue participating in his employer's group disability insurance. MSRA § 407 (B) states that "[a]ny employee shall have the right to maintain [any group life insurance, group insurance, family group,blanket and franchise health and accident insurance, and health careservices plan provided by any private or public employer in this state]." (Emphasis added). MSRA § 407 A and B.
The burden on the member is the same for the preservation of his retirement benefits, i.e., notice to the employer upon commencement of service and timely receipt by the employer of the member's contributions. MSRA § 407 (B) and (C).
MSRA § 407 is much more statutorily extensive in the granting of insurance rights and entitlements to the Reservist and Guardsman than USERRA, which only addresses health insurance plans under USERRA § 4317.
Employer group plans can be implemented for the employees' benefits either through an insurance company, or either through a self-insurance program of the employer. The Louisiana Department of Insurance regulates and provides guidance on group and self-insured group disability insurance plans. See, generally, L.S.A. R.S. §§ 22:2, 22:163, 22:172,22:173, 22:174, 22:215, 22:215.1, 22:215.6, 22:215.8, 22:221, 22:230,22:613, 22:251, 22:1534, etc.
Insofar that any group disability insurance is available to the other employees of the firm, then the active duty member and his family, is entitled to pay, contribute to, and be protected by that plan.
Question 6: Who enforces the Military Service Relief Act for themember?
The sixth question asks who enforces the MSRA for the State of Louisiana? It is our opinion that the MSRA grants a right of action to the individual member claiming a right or benefit under MSRA, § 421 (B).
There is no outside agency enforcement or investigation of MSRA violations, per se. Rather than the complex procedures established for the enforcement and investigation of rights under the USERRA,38 U.S.C. § 4323, MSRA § 421 gives the member a direct action against his employer in the district court for the parish in which the member is employed. Of course, any U.S. Department of Labor Veterans' Employment and Training Service (VETS) investigations and its materials and exhibits pursuant to an USERRA investigation under USERRA §§ 4321 and 4326 may be obtained and used in the State court proceedings under MSRA § 421 (C) and 422 (A), under the Louisiana rules of evidence and the rules applicable to ordinary proceedings
Interestingly enough, the State courts also have jurisdiction under MSRA § 422 (A) to provide a forum for the proceedings to adjudicate the rights of the employee for those Federal protections under the Soldiers' and Sailors' Civil Relief Act (50 U.S.C. App § 501 et seq.), SSCRA, and the Uniformed Services Employment and Reemployment Rights Act (38 U.S.C. § 4301 through 4333), USERRA, as well as MSRA.
Under the USERRA, there is outside investigation and enforcement available for violations, allowing the service member to file a complaint with the Secretary of Labor, who "shall investigate the complaint." USERRA § 4322 (d). If the Secretary is unable to resolve the complaint, then the service member may request that the Secretary refer the complaint to the U.S. Attorney General, who may then appear on behalf of and act as attorney for the service member. USERRA § 4323 (a).
While there is no equivalent State agency to conduct MSRA investigations, in a fashion similar to USERRA, the court may award reasonable litigation expenses and attorney fees in any proceeding employed to enforce the MSRA provisions.
We hope that this information is helpful to you, and if we may be of further assistance, please do not hesitate to contact our office.
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK/tp
DATE RELEASED: July 12, 2001 REQUESTED BY: Mr. Stephen W. Crawford Legal Assistance Attorney for Commander, 8th Coast Guard District 501 Magazine Street, Room 1311 New Orleans, LA 70130-3396 AUTHOR: GARY L. KEYSER, CHIEF Lands Natural Resources